IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL NO. 4:20-CR-7 (CDL) |
| | : | |
| | : | |
| AUBREY CRITTENDEN, | : | |
| Defendant | : | |
| | : | |
| _____ | : | |

COMES NOW the United States of America, by and through its attorney, the United States Attorney for the Middle District of Georgia, files this objection to the Court's proposed COVID-19 trial protocols.  In support thereof, the United States shows as follows:

I. <u>Procedural Background</u>

Defendant was indicted on a single count of 18 U.S.C. 922(g) on February 12, 2020. ECF 1. On August 4, 2020, the Court held a virtual pre-trial conference during which the Court outlined its proposed COVID-19 trial protocols. ECF 32.

II. <u>Requirement for Witnesses to Wear  Masks While Testifying</u>

A. <u>Citation of Authority and Argument</u>

The Court's proposed protocol requiring witnesses to wear masks while testifying may violate the Confrontation Clause. The Confrontation clause of the Sixth Amendment guarantees to a defendant the right to physically face witnesses who testify against him and for the jury to view the witness' demeanor. *Maryland v. Craig*, 497 U.S. 836, 844-46

(1990). However, the right to a face-to-face confrontation is not absolute; it can give way to other arrangements if the Court makes a finding that the alternative arrangement is "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*. at 850. The hallmarks of confrontation used to measure reliability are: (1) physical presence of the witness, (2) opportunity for cross-examination, (3) testimony under oath, and (4) observation of demeanor by the jury. *Id*. at 846.

Without a doubt, masks serve the important public interest of safeguarding the health of trial participants in the courtroom during the COVID-19 pandemic. On the other hand, the existence of reasonable alternatives, as recommended in the next section, may undercut the "necessity" argument for denying face-to-face confrontation. Furthermore, the mask requirement for witnesses only compromises one of the four hallmarks of confrontation: jury's ability to assess the witness's demeanor and credibility. While a witness' eyes will be visible, the rest of the witness's face will be obscured; as a result, the jury may find it difficult to gauge facial reactions to questions posed by counsel. To be clear, the Government is not asserting this rule will definitely lead to error but simply pointing out the possibility to the Court.

B. <u>Recommendations:</u>

In order to avoid potential constitutional issues, the Government, therefore, requests the following safety protocols in lieu of requiring witnesses to wear masks:

1. Provide transparent face shields or masks for witnesses to wear while testifying;

2. Witnesses not wear masks, but ensure adequate distancing between the witnesses and other persons in the courtroom. (Having the witness testify from the jury box as currently proposed by the Court should provide adequate distancing from other persons.); or

3. Witnesses not wear masks and erect a portable, clear plexiglass screen where the witness will be testifying.

Each witness will wear a mask the entire time he/she is in the courthouse, with the exception of when that witness is testifying. The Government offers these recommendations out of an abundance of caution in order to mitigate the risk of error.

In the event the Court keeps the mask requirement for witnesses when testifying, the Government requests for the Court to obtain a written, limited waiver of the Defendant's right to confrontation. [Exhibit A].

### III. Requirement of Jury Venire and Petit Jury to Wear Masks

#### A. Citation of Authority and Argument

Similarly, the requirement for jurors to wear masks during jury selection may pose constitutional or due process issues. The Sixth Amendment guarantees the right to an impartial jury; and the use of peremptory strikes helps to ensure an impartial jury is produced. *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000). The ability for the Court, counsel, and Defendant to observe the facial expressions of jurors during voir dire will be impaired. It is an established and accepted practice for counsel to base decisions

to strike on a juror's demeanor, including facial expressions. As the Eighth Circuit has explained:

> It is well to note that feelings are not always expressed in words, and, indeed, may be clearly manifested by gestures and facial expressions. A grimace or stare may express hostility or displeasure quite as clearly as words shouted across a room. Much literature may be found on interpreting 'body language' as a fundamental and effective practice in the selection of a jury.

*Reynolds v. Benefield*, 931 F.2d 506, 512 (8th Cir. 1991). Other courts have recognized the importance of assessing juror's demeanor as well. *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001) (upheld Government's peremptory strike of juror who smiled at defendant); *United States v. Cordoba-Mosquera,* 212 F.3d 1194 (11th Cir. 2000) (upheld peremptory strike due to juror's mannerisms and manner of saying things); *United States v. McMath*, 559 F.3d 657, 665 (7th Cir. 2009) (Government's reason for striking juror was proper and valid where the prosecutor cited the juror's facial expression— "looked angry and not happy to be here"— as the basis.). It is also important for the Court to be able to evaluate a juror's demeanor in exercising its discretion regarding for-cause challenges. *Skilling v. United States*, 561 U.S. 358, 386 (2010). Thus, the ability for the Court, counsel, and Defendant to exercise the fundamental practice of interpreting demeanor may be compromised by requiring prospective jurors on the venire panels to wear masks.

B. <u>Recommendations:</u>

The Government, therefore, makes the following recommendations in order to lessen the risk of error:

1. Provide clear face shields or masks to jurors in the venire and those selected to serve during the trial;

2. Request jurors temporarily remove masks when answering questions during voir dire; or

3. Provide additional peremptory strikes to both parties.

### IV. Seating Defendant Six Feet from Counsel

#### A. Citation of Authority and Argument

Finally, the Court's proposal to have Defendant seated at least six feet away from defense counsel's table raises concerns regarding the impairment of Defendant's Sixth Amendment right to assistance of counsel. Specifically, there is a risk Defendant will be deprived of the ability to confer privately with counsel during the trial because of social distancing. Courts have approved of similar seating arrangements that separate a defendant from counsel so long as they can consult freely during the trial. *United States v. Levenite*, 277 F.3d 454, 465–66 (4th Cir. 2002) (held that the placement of defendants six feet behind their counsel did not deny them the assistance of counsel where counsel and client were free to consult throughout the trial.); *United States v. Balsam*, 203 F.3d 72, 81–82 (1st Cir. 2000) (held seating the defendants four to five feet from defense table did not deprive them of assistance of counsel because defendants were permitted to consult freely with their lawyer.) Therefore, as along as the Court provides some reasonable

accommodations that allow Defendant and counsel to consult freely during the trial, then no error should result.

B. <u>Recommendations:</u>

Government respectfully requests the following recommendations:

1. Provide a dedicated text-messaging device, i.e. tablet, phone, laptop, to allow Defendant to communicate with counsel during trial;
2. Provide headsets like those used with interpreters to Defendant and counsel; or
3. Provide a break out room or area for counsel to confer with Defendant, as needed. (The white noise machine can be used to obscure the conversation if the break out area is in the courtroom.)

Regardless of which accommodation the Court selects above, the Government also requests for the Court to confirm with the Defendant, on the record, that he was able to consult with counsel. This inquiry should be done during each scheduled break to ensure Defendant's right to confer with counsel is protected.

V. **Conclusion**

Based on the argument and authority presented above, the United States respectfully requests that this Court modify its COVID-19 trial protocols to address the issues raised above.

Respectfully submitted, this 12 day of August, 2020.

CHARLES E. PEELER

                        UNITED STATES ATTORNEY

BY:    */s/Chris Williams*
        CHRISTOPHER WILLIAMS
        ASSISTANT UNITED STATES ATTORNEY
        GA Bar No. 344049
        United States Attorney's Office
        Middle District of Georgia