IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA      *

vs.                           *

                                                    CASE NO. 4:20-CR-7 (CDL)

AUBREY CRITTENDEN             *

    Defendant.                *

_____

O R D E R

Today the Court must decide how to accommodate a defendant's speedy trial rights under the Constitution and statutory law in the middle of a global pandemic that creates unique and substantial health risks to trial participants. Defendant has been charged with possession of a firearm by a convicted felon, 18 U.S.C. § 922(g). He has been determined to be a flight risk and danger to the community, and thus he is detained and will remain so pending trial. Defendant insists upon an immediate trial, and the Government has not filed a motion for continuance. Instead, the Government objects to the following protocols that the Court intends to impose during the trial: that witnesses wear masks while testifying, that jurors wear masks during jury selection, and that Defendant sit six feet from his counsel. The Government maintains that these restrictions could infringe upon Defendant's constitutional rights. Before the Court addresses the Government's concerns in turn, the Court provides some background

1

on the nature of the pandemic that led to these special courtroom protocols and the Court's response to it.

BACKGROUND

**I.   The COVID-19 Pandemic**

In early 2020, the general public became aware of an outbreak of a virus in Wuhan, China that has been designated in the scientific community as SARS-CoV-2 but is often referred to as "novel coronavirus" or the shorthand "coronavirus."  This virus can cause the disease known as "COVID-19."  The virus is generally believed to be spread by the transmission of body fluids through the respiratory tract, typically from a sneeze or cough.  But it can also survive on certain surfaces and be contracted through human contact with the contaminated surface and subsequent contact with the face in a manner that allows it to enter the respiratory tract through the nose or mouth.  If the virus produces COVID-19, the symptoms may include coughing, malaise, fatigue, fever, and respiratory distress, and it may cause death, particularly in persons with underlying medical conditions that make them vulnerable to respiratory distress.

The spread of the virus has risen to the level of a global pandemic.  In order to stave off further spread, national, state and local governments have declared national and local emergencies and encouraged (and in some cases ordered) that citizens remain in their homes, that businesses be closed, and that traffic from other

countries into the United States be restricted.  The United States economy has essentially shut down during parts of the pandemic with many people losing their jobs.   Unprecedented financial resources have been made available by the United States Congress through loans, direct payments to taxpayers, and other financial stimuli.  The federal and state judiciaries have been forced to conduct proceedings remotely in order to minimize person-to-person contact.  Over 173,000 persons in the United States have lost their lives with an estimated 5.54 million having become sick from the disease.  With no vaccine presently available, the primary method of prevention includes an emphasis on identification of those who may be infected with the virus, social distancing, wearing masks in public, and aggressive hand hygiene.  Increased vigilance is vital for those at high risk because of compromised immune and respiratory systems and other serious underlying health conditions.

## II.  The Court's Response

On March 16, 2020, the Court issued a standing order that modified court procedures in light of the pandemic.  That order provided as follows:

> The Court enters this standing order to address
> continued court operations in light of the COVID-19
> (coronavirus) pandemic.  The Court observes that the
> President of the United States has declared a National
> Emergency throughout the nation in response to the
> spread of the coronavirus; the Governor of the State of
> Georgia has declared a public health emergency

throughout the state in response to the spread of the coronavirus; the World Health Organization has declared coronavirus a pandemic; and the Center for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease.

In order to protect public health, including the health of court employees, parties, and court participants, the Court finds it necessary to adjust its operating procedures. To reduce the size of public gatherings, minimize travel, and maximize social distancing, the United States District Court for the Middle District of Georgia hereby orders that it shall remain open for business with the following adjustments to its normal operations:

1. Persons falling into one of the following categories shall be denied admittance into any division courthouse in the Middle District of Georgia without obtaining an exception from the Chief Judge:

    a. Anyone who has been to or been in close contact with anyone who has been to one of the designated Level 3 countries within the 14 days immediately preceding attempted access to the courthouse, which countries presently include China, Iran, South Korea, and all European countries;

    b. Anyone who has been on a cruise within the 14 days immediately preceding attempted access to the courthouse;

    c. Anyone who has been asked to self-quarantine by any healthcare provider or who lives with someone who has been asked to self-quarantine;

    d. Anyone who has been diagnosed with COVID-19 (coronavirus) or has had contact with anyone who has been so diagnosed.

2. Effective immediately, no jury trials shall be held in the Middle District of Georgia for a period of sixty (60) days from the date of this Order. With regard to criminal cases, the Court finds that the right of defendants in criminal cases and the public to a speedier trial during the next 60 days is substantially

outweighed by the public interest of protecting the
health and safety of the defendants, case participants,
court employees, jurors, and the public, which can only
be protected by this 60 day moratorium on jury trials.
The ends of justice require this continuance.
Accordingly, the time period of the continuance, March
17, 2020 to May 16, 2020, shall be excluded under the
Speedy Trial Act, 18 U.S.C. §3161(h)(7)(A).   Although
this order shall have the effect of canceling and
continuing all jury trials during this 60 day period,
any defendant in a criminal case shall have the right to
file a motion for a speedier trial, which shall be
considered and decided by the judge assigned to the
defendant's case.

To avoid confusion, the Court emphasizes that the
following activities shall not be affected by today's
order:

1. Criminal matters before Magistrate Judges, such as
initial appearances, arraignments, detention hearings,
the issuance of search warrants, and traffic court shall
continue to take place in the ordinary course.

2. Grand juries shall continue to meet.

3. Individual judges will continue to hold hearings,
conferences, and bench trials, unless ordered otherwise
by the presiding judge.

The Clerk's Office and the United States Probation and
Pretrial Services Office shall remain open.

Subsequent to the entry of this order, Congress enacted the

CARES Act which in relevant part permitted courts to conduct

certain proceedings remotely under certain circumstances.  This

Court entered a standing order pursuant to the CARES Act on March

30, 2020.  That standing order stated:

On March 13, 2020, under the National Emergencies Act,
50 U.S.C. §§ 1601–1651, the President of the United
States declared a national emergency. On March 27, 2020,
the President signed the Coronavirus Aid, Relief, and
Economic Security Act, H.R. 748 (the CARES Act), which

authorizes the Judicial Conference of the United States to provide the Chief Judges of the United States District Courts authority to permit identified criminal proceedings by video or audio conference. On March 29, 2020, the Judicial Conference of the United States determined that "emergency conditions due to the national emergency declared by the President have materially affected and will materially affect the functioning of the federal courts generally."

Pursuant to section 15002(b) of the CARES Act:

1.   A judge in this district is authorized by this order and with the consent of the defendant or a juvenile after the defendant or juvenile confers with counsel to use video conferencing, or telephonic conferencing if video conferencing is not reasonably available, for the following:

    (A) a detention hearing under 18 U.S.C. § 3142;

    (B) an initial appearance under Rule 5, Federal Rules of Criminal Procedure;

    (C) a preliminary hearing under Rule 5.1, Federal Rules of Criminal Procedure;

    (D) a waiver of indictment under Rule 7(b), Federal Rules of Criminal Procedure;

    (E) an arraignment under Rule 10, Federal Rules of Criminal Procedure;

    (F) a hearing under Rule 32.1, Federal Rules of Criminal Procedure, to determine a violation of, and revocation of, the terms of probation or supervised release;

    (G) a hearing under 18 U.S.C. § 3148 to determine a violation of, and revocation of, the terms of pretrial release;

    (H) a hearing under Rule 40, Federal Rules of Criminal Procedure, to resolve an alleged failure to appear or a violation;

    (I) a misdemeanor plea or sentencing under Rule 43(b)(2), Federal Rules of Criminal Procedure; and

(J) a hearing under 18 U.S.C. §§ 5031–5043, except for a contested transfer hearing, a juvenile delinquency adjudication, or a trial.

2.   The undersigned finds that during this national emergency, a felony plea under Rule 11, Federal Rules of Criminal Procedure, and a felony sentencing under Rule 32, Federal Rules of Criminal Procedure, cannot occur in person and in court in this district without serious jeopardy to public health and safety. As a result, if a judge finds for a stated reason in a particular case that delay of a felony plea or sentencing will result in serious harm to the interests of justice, the judge with the consent of the defendant or a juvenile after the defendant or juvenile consults with counsel can conduct the plea or sentencing by video conference or by telephonic conference, if video conferencing is not reasonably available. This authority extends to a similar hearing under the Federal Juvenile Delinquency Act, 18 U.S.C. § 403.

This authority is effective for ninety days unless ordered otherwise. If the emergency persists longer than ninety days, an extension is available under the CARES Act. However, this authority terminates on the last day of the national emergency declared by the President on March 13, 2020, or the day on which the Judicial Conference of the United States determines that the emergency no longer materially affects the United States courts or this district, whichever occurs first.

To the extent inconsistent with this order, any order in this district is SUPERSEDED.

Because conditions related to COVID-19 have persisted, the Court has extended these standing orders with minor revisions, and they remain in effect.   These standing orders leave courtroom protocols to each individual judge.   The undersigned adopted the following courtroom protocols and issued the following notice to counsel in this action:

Before appearing in person at a hearing in front of Judge Land at the United States Courthouse, counsel

should familiarize themselves with the requirements for admission to the courthouse as set out in Standing Order 2020-09, which can be found on the Court's website, www.gamd.uscourts.gov. Counsel is responsible for informing their client and any other participants who counsel knows intend to attend the hearing of the admission requirements. Failure to comply with the requirements will result in a denial of access to the courthouse.

In addition to the requirements for admission to the courthouse set forth in Standing Order 2020-09, counsel, participants and all spectators shall be required to comply with the following requirements while inside the courtroom, unless otherwise directed by Judge Land:

1. No one will be admitted to the courtroom without wearing a mask, and the mask shall remain in place, including when speaking. If a Defendant in a criminal proceeding, other than a trial, refuses to wear a mask, Judge Land will consider having the Defendant taken to the holding cell outside the courtroom and participate in the proceeding via video. Those persons wishing to enter the Courtroom should provide their own mask.

2. All participants and spectators shall remain at least 6 feet apart while in the courtroom. If counsel wishes to confer with their client during the proceeding, they may do so upon notifying Judge Land that they wish to waive the 6 feet distancing requirement. In criminal cases, counsel will have the option to confer with their client outside the courtroom in the Marshal holding cell area where protective shields provide some protection.

3. During guilty plea and sentencing hearings, Defendants shall be positioned at the large lectern and remain there throughout the proceeding.

4. No counsel or other participants shall approach the Clerk or the bench. If counsel needs to provide something to the Clerk during a proceeding, they shall do so by placing it on the small lectern located in front of the jury box.

5. Upon departure from the proceeding, each counsel shall wipe down (with disinfecting wipes that will be provided on each counsel table and at the large lectern)

the area with which they came in contact, including the table, the chair and the microphone. Upon arrival at a proceeding, each counsel shall have the disinfecting wipes available at their table to wipe down their respective areas.

6.  During evidentiary hearings in which a witness testifies live in the courtroom, the witness shall be positioned in the traditional jury box in the middle chair in the back row of the jury box.

7. Civil jury trials will be decided by a jury consisting of no less than 6 and no more than 8 persons.

8. Jurors will not be seated in the traditional jury box. They will be spaced out at least six feet apart in the public gallery area. Spectators shall be seated in the balcony maintaining a distance of six feet apart.

9. During jury breaks, the jury will be evenly split between the two jury rooms and directed to maintain a distance of six feet of separation.

10. Jurors will be escorted to and from the jury rooms for breaks in a manner that ensures that they maintain a distance of six feet of separation.

11. Jurors shall deliberate in the courtroom gallery area maintaining a distance of 6 feet of separation. During jury deliberations, the courtroom shall be closed and occupied only by jurors to maintain the secrecy of the deliberations.

12. Voir dire shall be conducted in a manner that assures six feet social distancing.  This may require that some jurors wait in other areas of the courthouse until they are questioned in the courtroom.

Notice to Counsel, ECF No. 33.

DISCUSSION

I.  **Mask Requirement and the Confrontation Clause**

The Defendant in this action has insisted on his speedy trial

rights, and the Court has scheduled his jury trial to begin on

September 14, 2020.  The Court notified counsel that, consistent with its COVID-19 courtroom protocols, all persons entering the courtroom, including parties, lawyers, witnesses, jurors, and spectators, will be required to wear masks that cover their nose and mouth.  The Government is concerned that by requiring witnesses to wear a mask that covers their nose and mouth during their testimony, the Court may infringe upon the Defendant's right to face-to-face confrontation of the witnesses against him as guaranteed by the Confrontation Clause of the Sixth Amendment.  To avoid this possible constitutional violation, the Government requests that the Court not require witnesses to wear masks during their testimony, and if the Court finds some face protection to be necessary, that it direct that transparent face shields or plexiglass screens be substituted for the mask requirement.  Under the specific circumstances presented by the global COVID-19 pandemic, the Court is satisfied that the current mask requirement does not violate the Confrontation Clause.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  The founders included this right in the Constitution to prevent conviction by affidavit.  *See Coy v. Iowa*, 487 U.S. 1012, 1015-16 (1988).  They did not want affidavits or depositions that were sometimes used in civil cases to be used against a

criminal defendant in lieu of "personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895). The defendant is thus guaranteed a "face-to-face meeting with witnesses appearing before the trier of fact." *Coy*, 487 U.S. at 1016. But this right is not absolute. For example, in *Maryland v. Craig*, the Supreme Court found that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial . . . where denial of such confrontation is necessary to further an important public policy and . . . where the reliability of the testimony is otherwise assured." 497 U.S. 836, 850 (1990); *see also United States v. Yates*, 438 F.3d 1307, 1313 (11th Cir. 2006) (en banc) (applying the *Craig* test to determine whether a defendant's confrontation rights were violated when witnesses who lived in Australia testified in his criminal trial via two-way video conferencing).

Here, the mask requirement is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic. Without this

procedure, everyone in the courtroom would face the risk of being infected with a lethal virus. The Court's masking requirement is based upon the best available scientific information and advice. The Centers for Disease Control and Prevention ("CDC") strongly recommends that to avoid infection from the dangerous coronavirus, individuals should practice social distancing and wear masks over the nose and mouth. *Considerations for Wearing Masks*, Ctrs. for Disease Control and Prevention (updated Aug. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html. The wearing of the mask not only protects the wearer of the mask, but more significantly, protects others who may be in the same room with the person. *Id*. These precautions are particularly important inside of a building. The CDC also makes a distinction between "masks" and "face shields," which is what the Government recommends here. The CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for masks. *Id*. Given the CDC recommendations, which are based on the best available science in this area, the Court finds that its social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial. The Court further finds that face shields and plexiglass screens are not an adequate substitute and standing alone do not provide reasonable protection for the trial

participants.[1]  Thus a compelling policy reason exists for the mask requirement—protection of the health and safety of the trial participants and members of the public who may attend the trial.

Under *Craig*, this compelling policy must be considered in deciding whether a defendant's Confrontation Clause rights will be violated.  *Craig* also counsels that the Court must find that the reliability of the testimony is otherwise assured.  The central concern of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Craig*, 497 U.S. at 845.  After all, as the Supreme Court observed, the term "confront" means a "clashing of forces or ideas, thus carrying with it the notion of adversariness."  *Id.*  The Supreme Court has recognized four elements of confrontation in the trial context: physical presence of the witness, testimony under oath, cross-examination, and observation of demeanor by the trier of fact.  *Id.* at 846.  "The combined effect of these elements . . . serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings."  *Id.*  In

---

[1] Nothing in today's order prevents any witness or other participant from appearing with a mask that is transparent in the area of the mouth as long as it is consistent with CDC recommendations.

*Craig*, the Supreme Court determined that, although a necessary courtroom procedure may interfere with one of the elements of confrontation, the reliability of the witness's testimony was otherwise ensured because the procedure preserved the other elements. *Id.* at 851.

Here, under the Court's mask procedure, witnesses against the Defendant will be physically present in the courtroom, they will testify under oath, and Defendant will be able to have these witnesses cross-examined in the open courtroom in front of the Defendant and the jurors. The Defendant and jury will also be able to observe the witnesses' demeanor, although they will not be able to see their nose and mouth. The Court finds that this restriction does not diminish the face-to-face nature of the confrontation contemplated by the Confrontation Clause.

As Justice Scalia observed in *Coy v. Iowa*, the plain language of the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." 487 U.S. at 1016. This guarantee "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person" and it serves a "strong symbolic purpose" by "requiring adverse witnesses at trial to testify in the accused's presence." *Craig*, 497 U.S. at 846-47. After all, "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back'" and "even if the lie is told, it

14

will often be told less convincingly." *Coy*, 487 U.S. at 1019.   In *Coy*, the Supreme Court found that a courtroom procedure which involved placing a large screen between the defendant and witnesses so the witnesses could not see the defendant violated the defendant's right to a face-to-face confrontation with his accusers.   *Id*. at 1014.   Here, the Court's masking procedure is nothing like the procedure in *Coy*.   The only thing that will stand in the way of the Defendant and his accusers is a tiny piece of cloth covering only each witness's nose and mouth.   Therefore, the masks will in no way prohibit the Defendant and witnesses from directly looking upon each other in person during the testimony while in the presence of the jury.   There is no reason to believe that it is any less difficult to tell a lie to a person's face just because the liar's nose and mouth are covered.

Of course, the masks will eliminate two aspects of demeanor for the jury to consider:  movement of the nose and mouth.   But the Confrontation Clause does not require that the jury be able to see every language of the body.   *See Morales v. Artuz*, 281 F.3d 55, 56, 60-61 (2d Cir. 2002) (finding that permitting a witness to testify while wearing dark sunglasses was not contrary to clearly established federal law because it "resulted in only a minimal impairment of the jurors' opportunity to assess her credibility"); *United States v. de Jesus-Castaneda,* 705 F.3d 1117, 1120-21 (9th Cir. 2013) (finding that permitting a confidential informant to

testify wearing a wig and fake mustache did not violate the Confrontation Clause); *People v. Ketchens*, No. B282486, 2019 WL 2404393, at *9 (Cal. Ct. App. June 7, 2019) (finding a jury could adequately observe the demeanor of a witness who testified while wearing a hijab when the hijab was tight around her mouth and ultimately did not prevent the jurors from seeing her nose and eyes).

The Court finds that being able to see a witness's nose and mouth is not essential to testing the reliability of the testimony. Demeanor consists of more than those two body parts. Demeanor includes the language of the entire body. Here, the jurors will be able to observe most facets of the witnesses' demeanor. They can observe the witnesses from head to toe. They will be able to see how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak. They will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads. The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised during particularly probative questioning. Just as appropriate clothing will cover other parts of witnesses' bodies and potentially cover certain muscle twitches in those areas, the jury will not be able to see the masked witness's entire facial

expressions.  The masks, however, will not prevent observation of other aspects of their body language.

Although the Court must consider the ability to observe a witness's demeanor as part of the Confrontation Clause analysis, as the Court has done here, that single element of confrontation is not the "*sine non qua* of the confrontation right." *Craig*, 497 U.S. at 847.  The Confrontation Clause certainly does not insist upon observation of the witness by the jury at every trial in every instance in which testimony is admitted against a defendant.  And, thus, some testimonial hearsay statements are deemed admissible even though the jury would not be able to observe the demeanor of the individual who made the hearsay statement.  *Id*. at 847-48; *see generally Crawford v. Washington*, 541 U.S. 36 (2004).  Indeed, Federal Rule of Criminal Procedure 15 permits parties in criminal cases to depose witnesses "to preserve [their] testimony for trial," and courts have found it constitutional, under certain circumstances, for someone other than the individual making the statement to read those depositions at trial in lieu of having the witness appear and testify.  *See, e.g.*, *United States v. Mueller*, 74 F.3d 1152, 1156-57 (11th Cir. 1996) (finding that reading the Rule 15 deposition of an unavailable witness at trial did not violate the Confrontation Clause).  When this is done, the jury does not have an opportunity to observe *any* aspect of the witness's demeanor—much less his nose or mouth.  Accordingly, observation of

demeanor by the jury cannot be an irreducible constitutional requirement and must be subject to exception in certain circumstances.

The essence of the confrontation right is the guarantee that one's accuser must appear in the defendant's presence under oath while being subjected to cross-examination knowing that the reliability of his testimony will be closely scrutinized by the factfinder. That is the face-to-face confrontation contemplated by the Confrontation Clause. The mask requirement here does not diminish that confrontation or the reliability of a witness's testimony in a material way, and it is necessary to protect the trial participants and spectators from COVID-19. For all these reasons, the Court finds that its mask procedure does not violate the Confrontation Clause.

## II.  **Masks and Jury Selection**

The Government objects to the Court's requirement that jurors wear masks during the jury selection process because masks will impair the ability of the Court and counsel to observe the jurors' facial expressions. The Government suggests that this mask requirement may infringe on Defendant's Sixth Amendment right to an impartial jury.

The Government did not cite, and the Court could not find, any authority to suggest that requiring jurors to wear masks under the exceptional circumstances of the COVID-19 pandemic would

impair Defendant's right to a fair and impartial jury.  Rather, the Government's cases simply observe that a juror's demeanor is important and can provide a non-discriminatory explanation for striking a juror.   The Government's argument suggests that observation of the nose and mouth are essential to evaluating demeanor.   As explained in the preceding discussion, demeanor includes many aspects of body language which will still be present for evaluation.  Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable.   But the Court is unconvinced that it is required by the Constitution.  Through their review of informative juror questionnaires and questioning during voir dire, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is what the Constitution requires.

## III. Assistance of Counsel and Social Distancing

The Court's COVID-19 protocols state: "All participants and spectators shall remain at least 6 feet apart while in the courtroom. If counsel wishes to confer with their client during the proceeding, they may do so upon notifying Judge Land that they wish to waive the 6 feet distancing requirement. In criminal cases, counsel will have the option to confer with their client outside the courtroom in the Marshal holding cell area where protective shields provide some protection." Notice to Counsel 1.   The

Government objects to having the Defendant seated six feet away from his lawyer and suggests that this requirement may impair Defendant's Sixth Amendment right to assistance of counsel.

Preliminarily, the Court notes that counsel and the Defendant may choose to waive the six feet distance requirement. But even if they do not, the Court will be able to assure that they are able to communicate with each other during the trial. The Court recognizes that part of Defendant's right to assistance of counsel includes his right to confer with counsel during trial. The Government did not cite, and the Court did not find, any authority suggesting that seating a defendant six feet from counsel for safety reasons would impair the defendant's right to assistance of counsel if counsel and client are free to communicate throughout the trial. Rather, the Government cited cases *approving* such seating arrangements due in part to security concerns. *See United States v. Levenite*, 277 F.3d 454, 465-66 (4th Cir. 2002) (defendant seated six feet behind counsel and could pass notes); *United States v. Balsam*, 203 F.3d 72, 81-82 (1st Cir. 2000) (defendant seated four or five feet from counsel and could pass notes).

Here, the Court intends to permit Defendant to confer with his attorney during trial. The Court will not prohibit Defendant and counsel from passing notes to each other in a manner that they determine is safe. The Court already notified the parties that counsel will have the option to consult with Defendant outside of

the courtroom.  And, if counsel has difficulty consulting with Defendant at trial, counsel should notify the Court and request an opportunity to consult.  Accordingly, the Court finds that its social distancing seating arrangement will not impair Defendant's right to assistance of counsel.

CONCLUSION

The COVID-19 pandemic presents many challenges for conducting a jury trial that protects the Constitutional rights of a defendant and the health and safety of trial participants and spectators. Continuing such trials until the health risks substantially subside is certainly an option.  But when a presumptively innocent and detained defendant insists upon his right to a speedy trial, the Court is reluctant to continue the trial indefinitely, particularly when the Government apparently does not find it necessary.  To accommodate Defendant's right to a speedy trial while also protecting those who will be present for the trial, the Court has modified traditional trial protocols consistent with the professional scientific guidance from the CDC.  That guidance clearly recommends that in settings such as a trial masks should be worn and social distancing practiced.  For the reasons explained in today's order, the Court has concluded that these modifications do not infringe upon the Defendant's constitutional rights. Accordingly, they will be followed during the trial of this case.

IT IS SO ORDERED, this 21st day of August, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA